SIMON ZEMURRAY v. MALACHI J. BOULDIN, TAX COLLECTOR.

[40 South. Rep., 15.]

1. PRIVILEGE TAXES. *Licenses. Payment of tax. Rights of licensee. Laws 1904, ch. 76, sec. 93, p. 79. Trading cars.*

   Under Laws 1904, ch. 76, sec. 93, p. 79, imposing a license tax on trading cars and declaring that such cars traveling specified distances within the state shall be taxed designated amounts:

   (*a*) The tax so imposed is an occupation tax, and not a specific tax on each car operated; and

   (*b*) One who pays the tax for a designated number of miles acquires the right to operate his car on a single route for a distance not exceeding said number of miles for one year; and

   (*c*) In fixing distances, the point where the car was first opened for business as a trading car in this state is to be taken as the starting point, and not the point where the car first entered the state.

2. SAME. *Levee taxes. Laws 1902, ch. 80, p. 134. Nonpayment of taxes. Penalties. Power of levee board. Collection.*

   Under Laws 1902, ch. 80, p. 134, authorizing the levee commissioners for the Yazoo-Mississippi Delta to levy privilege taxes:

   (*a*) Where the operator of a trading car pays a license tax he is entitled to operate his car within the levee district for the distance specified, counting from the point where the car was first opened for business within the district; and

   (*b*) The levee commissioners have no power to increase damages to be collected for nonpayment of such tax beyond ten per centum of the amount thereof; and

   (*c*) The penalty for nonpayment of a levee privilege tax, provided in sec. 4, applies only to one who has been guilty of a default, and can only be exacted under a judgment of a court, and not by the tax collector.

FROM the circuit court of, second district, Coahoma county.

HON. SAMUEL C. COOK, Judge.

Zemurray, the appellant, doing business under the name of Zemurray & Company, was the plaintiff in the court below;

Bouldin, the appellee, the sheriff and tax collector of Coahoma county, was defendant there.          From a judgment in favor of defendant and dismissing the suit the plaintiff appealed to the supreme court.

Zemurray & Co. were fruit dealers, who shipped bananas in car-load lots from New Orleans for sale at stations in Mississippi.          Among the towns on the route selected by them on which to offer bananas for sale were Jackson, Miss., and Clarksdale, Miss.          On May 1, 1904, they shipped a car load of bananas to Jackson and•exposed them for sale.          The tax collector of Hinds county, in which Jackson is situated, demanded the payment of a privilege tax of $100 for operating a trading car.          The law under which this tax was demanded was and is the act of March 16, 1904 (Laws 1904, ch. 76, p. 58), the first section of which provided for the levy of a privilege tax on the industries thereinafter mentioned, and then followed many sections designating the industries upon which the tax was imposed, among them being sec. 93, in these words:

"Section 93.          On each trading car, traveling two hundred and fifty miles or more, $250;          same, traveling less than two hundred and fifty miles and more than one hundred and fifty miles, $150;          same, traveling less than one hundred and fifty miles, $100."

Appellant paid the license tax of $100 for operating the trading car a distance of less than one hundred and fifty miles, protesting that he was not operating a trading car such as was contemplated by the law.          On November 5, 1904, appellant shipped a car load of bananas to Clarksdale, Miss., a point north of Jackson, Miss., and more than one hundred and fifty miles from the southern border of the state, where the car shipped from New Orleans entered the state.          The tax collector of Coahoma county, in which Clarksdale is situated, and which lies within the Yazoo-Mississippi Delta levee district, demanded of appellant the payment of an additional sum of fifty dollars, on

the ground that the car was being operated a distance of more than one hundred and fifty miles, since the point at which it entered the state was more than one hundred and fifty miles from Clarksdale.    Appellant contended that after taking out the privilege license at Jackson he had a right to run the car into the state and to open the same at any station and sell bananas at any point in the state less than one hundred and fifty miles from the station where the car was first opened and bananas offered for sale.    The tax collector also demanded a penalty of fifty dollars for failure on the part of appellant to pay a privilege tax from the first of May of $150, the privilege-tax law of 1904 having authorized a collection of double the amount of privilege taxes as a penalty for failure to procure a license during the month in which it was due.    The tax collector also demanded a privilege tax of $150 for levee purposes, acting under sec. 93 of the privilege-tax statute, and Laws 1902, ch. 80, sec. 4, p. 133, which is as follows:

"Section 4.  Any person or corporation desiring to enjoy any of the privileges levied as aforesaid, by said board of levee commissioners, shall first pay the taxes as prescribed to the collector of taxes for the county wherein the privilege is to be exercised, and obtain from him the license hereinafter required; and any person or corporation who shall exercise any of the privileges so levied without first paying the tax and procuring the license, as required, shall, upon conviction, be fined not less than double the amount of the tax imposed on such privilege," etc.

The tax collector then demanded a penalty of $150 for failure of the appellant to pay the levee tax on the first of May.  The total amount demanded was $400, which appellant paid under protest, and brought this suit to recover it.    The plaintiff, in his suit against the tax collector, insisted that the $300 represented by the fifty dollars additional privilege tax, fifty dollars penalty, the fifty dollars additional levee tax, and the $150 paid the levee board, was illegally demanded.    The law authorizing

the Yazoo-Mississippi Delta levee district to levy privilege taxes was passed February 26, 1902, and provided that a penalty of ten per cent should be added on all delinquents; but the tax collector insisted that the act of 1904, which levied privilege taxes on certain occupations and provided a penalty of double the taxes, applied not only to general state and county taxes, but to levee taxes as well.

*J. W. Cutrer,* for appellant.

A search of the various dictionaries, law dictionaries, digests, and text-books has failed to disclose any definition or decision on this subject, aside from the case of *Vicksburg, etc., R. R. Co.* v. *State,* 62 Miss., 105.

There is one idea which seems to be crucial in determining whether or not a car is a trading car, and that is, the fact should clearly appear that the goods sold are replenished; for one who sells without replenishing his stock is not a merchant or a trader, and his car cannot be a trading car. *Agonett* v. *Edmonson,* 9 Bax., 610. . As stated by this court, "no occupation is to be taxed unless clearly within the provisions of the law." In the instant case, the car in question was an ordinary railroad freight box car, which was hired for a short time, to transmit fruit. The appellant did nothing to the car—fitted up no counters or shelves, nor in any way altered the car. Furthermore, the appellant did not travel in the car, nor did he have other persons to do so. The car was simply transported to a designated point by the railroad company, and there for the first time delivered to the consignee thereof. Again, the appellant had the right to open this car throughout its trip but three times, and each time he had to pay five dollars for this privilege. Nor did appellant have the right to replenish the car; when empty, it was delivered back to the railroad company to be disposed of as the company saw fit. In other words, the situation was just the same as if a merchant of Jackson should order a car load of coal from Memphis, and deliver ten tons from said car to a customer at Senatobia,

ten tons more at Canton, and sell the balance at Jackson. This certainly would not be a trading car.

Appellant had a license from the sheriff of Hinds county, which guaranteed him the privilege of operating a trading car in the state traveling less than one hundred and fifty miles. This means, of course, traveling as a trading car, and not traveling sealed and unattended, as an ordinary freight car. The car in question did travel more than one hundred and fifty miles, but not after it was opened and had sales made from it.

Notwithstanding that fact, because appellant's car had traveled over more than one hundred and fifty miles of railroad track to reach Clarksdale, appellee demanded of appellant an additional state license at the rate of one hundred dollars, being for a trading car, as stated by appellee, for traveling less than two hundred and fifty miles, and "at the point of the gun," so to speak, required appellant to pay an additional license fee from November 1, 1904, to May 1, 1905, being fifty dollars—one-half the additional license of one hundred dollars—for the one-half year from November 1st to May 1st, next ensuing.

The appellee piled on a one-hundred-per-cent damage because a car had been opened in October, and collected fifty dollars more as damages for the period covered by the time from November to May, as aforesaid.

Both of these payments were illegally required of appellant, and he should recover them in this action.

*R. V. Fletcher,* assistant attorney-general, for appellee.

While there is a dearth of authority upon what it takes to constitute a "trading car," the true test must be whether the articles contained in the car are shipped to fill orders previously given by purchasers or whether the sales are to be made after the car is stopped and delivery made at once in pursuance of these sales. It certainly cannot be important as to the number of places where the stops are to be made. The number of stops

fixed by contract between appellant and the transportation company doubtless depends upon the number of profitable markets along the line between New Orleans and Clarksdale. A peddler would be none the less a peddler because in his day's journey he stops at only three or four farmhouses, and these the ones where he is most likely to find customers. A book agent is certainly a book agent, even though he approaches only three people in a town for the purpose of soliciting business. An insurance solicitor is nevertheless an insurance solicitor, even though he seeks to write insurance only on the lives of millionaires, and thereby limits his clientage to a few individuals. One buying cotton seed for a single oil mill is still a "public buyer of cotton seed." *Jones* v. *State,* 69 Miss., 406 (s.c., 13 South. Rep., 728). And a store is a store, though sales be confined to one's own tenants. *Alcorn* v. *State,* 71 Miss., 464 (s.c., 15 South. Rep., 27).

If the test of a trading car is a store on wheels, certainly there can be a banana store on wheels; for this court has said that "until the legislature undertakes the work of classification of stores generally, we must hold the generic term used in the code to embrace every species of store not otherwise particularly named and taxed." *Pitts* v. *Vicksburg,* 72 Miss., 181 (s.c., 16 South. Rep., 418).

The fact that only one kind of goods is sold in his store renders him none the less a merchant. *State* v. *Whittaker,* 33 Mo., 457.

It will not do to say that the payment of the $100 tax at Jackson gave appellant the right to operate his car to any point within one hundred and fifty miles of Jackson. This would give him the right to travel for one hundred and fifty miles on each of the several railroads radiating from Jackson, or a total of one thousand and fifty miles. The distance from Clarksdale to the point where appellant's car entered this state is more than one hundred and fifty miles, and the car, following the practice of

stopping at three places on the line, was a trading car, traveling more than one hundred and fifty miles, and was, therefore, liable for taxation.

HARPER, Special J.,* delivered the opinion of the court.

This cause comes here on appeal from a final judgment dismissing plaintiff's action, after a demurrer to the declaration had been sustained. Upon the showing made by the declaration, the plaintiff was entitled to recover some part of his demand; and, since this cause must be reversed and remanded, we content ourselves with indicating the general principles which should control on the trial in the court below.

It is clear that the privilege tax levied upon "trading cars" is on the occupation, and not on a specific car, and that plaintiff in this case, upon the facts shown, was exercising such occupation. It is also clear that the legislature meant to limit the operation of each license to one particular route, for a distance not exceeding the miles named, for a period of one year, and that the distance is to be computed, not from the point where the car first enters the state, but from the point where it first offers for business as a trading car. In the case at bar, the license issued in May, 1904, in the city of Jackson, by the sheriff of Hinds county, operates as a state license to plaintiff for one year, over one particular route, and only one, for a distance not exceeding one hundred and fifty miles from the point where, under said license, bananas are first offered for sale. Likewise the levee-board license, being entirely separate and distinct, must take into account, in determining the distance, the miles operated within the levee district, counting from the point where bananas are first offered for sale in such levee district, and not from the point where the car first enters the state.

Laws 1902, ch. 80, sec. 10, p. 134, granting the levee board

---

* Owing to illness, Chief Justice Whitfield was forced to retire from the bench for a few days, and William R. Harper, Esq., a member of the supreme court bar, was appointed and commissioned to act in his place. The opinion in this case was rendered by Special Judge Harper while so acting.

power to levy and collect privilege taxes, specifically fixes the damages to be collected for nonpayment at ten per cent of such tax. This provision remains in force, not being affected by Laws 1904, ch. 76, sec. 112, p. 84. Since the legislature has fixed the penalty, the levee board has no power to change it by order. The penalty fixed in Laws 1902, ch. 80, sec. 4, p. 133, applies only to one who has been convicted of a default, and can only be exacted under a judgment of court, and not by the tax collector.

*The cause is reversed and remanded, to be proceeded with in accordance with this opinion.*